IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL COLEMAN,  )<br>           )<br>     Petitioner,  )<br>    v.       )<br>           )<br>STEPHEN MAYBERG, Ph.D.,  )<br>           )<br>     Respondent.  )<br>_____ ) | No. C 01-3428 SBA (PR)<br><br>**ORDER DENYING PETITION<br>FOR WRIT OF HABEAS<br>CORPUS** |

## I. INTRODUCTION

Petitioner is a convicted felon with a history of sex crimes. Shortly before he was scheduled to be released from prison for his most recent offense, the State of California began seeking his civil commitment to a state mental health facility under California's Sexually Violent Predators Act, Cal. Welf. & Inst. Code § 6600, et seq. ("SVPA"). Pursuant to the SVPA, the Alameda County Superior Court held a probable cause hearing on August 25, 2000 and determined that there was probable cause to believe that Petitioner was likely to engage in predatory criminal behavior upon his release. The court then ordered a trial be held on October 20, 2000 to determine whether Petitioner is a "sexually violent predator" ("SVP") within the meaning of SVPA. (Resp't Ex. B.) No such trial occurred on October 20, 2000. After numerous continuances over the next five years, Petitioner is still currently detained at the Atascadero State Hospital ("ASH") in Atascadero, California awaiting trial.

On September 10, 2001, Petitioner filed the instant petition for a writ of habeas corpus under 28 U.S.C. § 2254 raising numerous claims challenging the constitutionality of the SVPA proceedings against him.[1] Among his claims, Petitioner alleges that he has been denied the right to a

---

[1] Absent special circumstances, reasons of comity and federalism require the Court to abstain from ruling on the claims challenging the constitutionality of the SVPA proceedings until Petitioner's state proceedings are completed pursuant to the abstention doctrine in Younger v. Harris, 401 U.S. 37, 43-54 (1971). See infra Section III(A). The only exception is Petitioner's speedy trial claim, which will be analyzed according to the four-part test in Barker v. Wingo, 407 U.S. 514, 530 (1972). See infra Section III(B).

speedy trial as guaranteed by the Sixth Amendment on the ground that he has been detained for over five years without being brought to trial on the SVPA charge in violation of his federal constitutional rights.

In an Order dated September 30, 2002, the Court conducted an initial review of the petition pursuant to 28 U.S.C. § 2243. Because Petitioner stated he was a pre-trial detainee, however, the Court explained that absent special circumstances, reasons of comity and federalism required the Court to abstain from ruling on the petition until the completion of Petitioner's state proceedings. (September 30, 2002 Order at 2-3.) The Court concluded that it was unable to determine the current status of Petitioner's civil commitment proceedings from the contents of the petition and directed Petitioner to file an amended petition to clarify if he has since been "tried and committed pursuant to a final judgment of the superior court." (Id. at 3.) The Court dismissed the petition without prejudice and gave Petitioner thirty days to amend.[2]

On October 31, 2002, Petitioner filed a timely amended petition. In an Order dated May 27, 2004, the Court found that Petitioner's claims -- including his claim that his speedy trial rights were violated -- appeared colorable and merited an answer from Respondent. The Court issued an order directing Respondent to show cause why the writ should not be granted.

After requesting two extensions of time, Respondent filed its Answer to the Order to Show Cause on November 24, 2004. Respondent argues that the petition should be denied on both procedural and substantive grounds. On procedural grounds, Respondent argues that because Petitioner is a pre-trial detainee awaiting trial, he "does not have standing to challenge [the SVPA's] constitutionality under 28 U.S.C. § 2254." (Answer at 2.) On substantive grounds, Respondent denies that Petitioner's speedy trial rights were violated. (Id. at 3.) Respondent alleges that Petitioner intentionally relinquished his right to a speedy trial by waiving it. (Resp't Ex. C at 2.)

---

[2] The Court also denied Petitioner's request for a stay of his state civil commitment proceedings for reasons of comity and federalism, which the Court noted were the same reasons why "this Court [was required] to abstain from ruling on this petition until those state proceedings are completed, absent special circumstances not yet demonstrated by Petitioner." (September 30, 2002 Order at 6.)

On December 20, 2004, Petitioner filed his Traverse.[3] The petition is now ready for consideration on the merits.

## II. BACKGROUND

In 1983, when Petitioner was seventeen years old, he was adjudicated in Juvenile court and found responsible for rape and false imprisonment. (Resp't Ex. D at 1.) Petitioner was made a ward of the court and was committed to the California Youth Authority to serve eight years for the rape offense and three years, concurrent, for the false imprisonment offense. (Id.)

In 1995, Petitioner pled no contest to forcible rape with an enhancement for great bodily injury. He was sentenced to a six-year prison term imposed by the Alameda County Superior Court. (Id. at 2.)

In 1996, after Petitioner's sentencing on the 1995 conviction, the California Legislature enacted the SVPA. Petitioner was later granted parole and released. Petitioner alleges that he did not commit any sexually violent crimes while on parole.

In 1999, Petitioner was arrested for failure to register as a sex offender. Petitioner accepted a parole revocation offer of eight months and was due to be released back to parole on April 7, 2000.

On January 13, 2000, the Board of Prison Terms ("BPT") conducted an initial screening and concluded that Petitioner met the first-level sexually violent predator criteria for referral to the

---

[3] Petitioner states in his Traverse that Respondent's arguments against his speedy trial claim "divert this [C]ourt's attention from the true constitutional violations blatantly performed by the government's apathetic application of the SVPA." (Traverse at 8.) Petitioner argues that the SVPA mandates the state to "implement proceeding [sic] under its authority at least **six months prior** to the release date of the inmate being considered . . . [in order] to provide ample time for the final adjudication of the SVPA petition (if filed in superior court) to be adjudicated **prior to the inmate's release date**." (Id., (citing Cal. Welf. & Inst. Code §§ 6600-6603) (emphasis in original)). Petitioner argues that the state waited a week prior to his release date to file the SVPA petition against him. (Id. at 10.) The Court finds that Petitioner's argument (that the state improperly implemented the SVPA statute) is purely a claim of state law error without any basis for federal habeas relief. However, Petitioner also states a separate speedy trial violation argument by pointing out that "[f]rom the time of which petitioner was supposed to be released back to the community to [the time he filed his Traverse], there has been no adjudication of the actual merit of the state's [SVPA] petition." (Id. at 12.) Therefore, the Court will analyze Petitioner's claim as a violation of his federal right to a speedy trial.

1  Department of Mental Health ("DMH") for further evaluation, pursuant to the SVPA. (Resp't Ex. D)
2  On March 27, 2000, shortly before his scheduled parole release date, the Alameda County district
3  attorney filed a petition seeking Petitioner's involuntary civil commitment as a SVP pursuant to the
4  SVPA. (Resp't Ex. A.) The following proceedings followed in state and federal court.

5       **A.**     **State Superior Court Proceedings**

6       Petitioner filed a pro se habeas corpus petition in the Alameda County Superior Court
7  challenging the state's civil commitment petition claiming: (1) untimely filing of a petition; (2)
8  judicial estoppel; and (3) equitable estoppel. (Pet'r Attach. B.[4]) On June 2, 2000, Petitioner was
9  represented by Assistant Public Defender Maxine Fasulis at a hearing on his petition for a writ of
10 habeas corpus in the state superior court. Petitioner alleged that while he was serving his sentence,
11 he was repeatedly examined by state mental health professionals. Petitioner claims that contrary to
12 the allegations in the state's petition, none of the professionals diagnosed him with a mental disorder
13 that predisposed him to the commission of sex crimes, concluded that he lacked self-control, or
14 asserted that he needed treatment to prevent him from committing sex crimes in the future.
15 Petitioner also alleged that he had not committed another sexually violent crime since he had been
16 paroled. The court took the matter under advisement and later denied the petition. (Am. Pet. at 4.)

17      On August 25, 2000, the Alameda County Superior Court conducted a probable cause
18 hearing to determine whether Petitioner was likely to engage in sexually violent predatory criminal
19 behavior if released. The hearing commenced with the testimony of Dr. Charlene Steen. (Resp't Ex.
20 B.) The matter was then submitted, and the Court found probable cause to believe that Petitioner
21 was a SVP. (Id.) The Court ordered that Petitioner remain in custody pending trial on the SVPA
22 charge. (Id.)

23      The case was then continued numerous times during the next five years. (Resp't Ex. C
24 [minute orders from March 9, 2001 through November 5, 2004]; Resp't Ex. E [transcript of

---

[4] Petitioner has two unnumbered attachments to his petition: a) the decision by the Supreme Court of California and b) the transcript of the hearing on Petitioner's habeas corpus petition before the superior court. The Court has labeled these attachments "A" and "B" respectively.

4

proceedings on November 5, 2004 and February 4, 2005].)

During the five years Petitioner's case was being continued, he challenged his pending civil commitment proceedings by filing petitions for habeas relief in the California Court of Appeal, the California Supreme Court and federal district court. See infra subsections B-C.

### B. State Appellate and Supreme Court Proceedings

Petitioner filed a petition in the California Court of Appeal on the same grounds as the instant petition, and it was denied by the state appellate court on August 31, 2000. (Am. Pet. at 5.) Petitioner also filed a petition for a writ of habeas corpus in the California Supreme Court, and his petition was summarily denied on July 25, 2001. (Pet'r Attach. A.)

### C. Federal Court Proceedings

On September 10, 2001, Petitioner filed the instant petition for a writ of habeas corpus raising several constitutional challenges to the SVPA, both generally and as applied. In relevant part, Petitioner asserts a violation of his speedy trial rights pursuant to the Fifth, Sixth and Fourteenth Amendments.

## III.   DISCUSSION

### A. Challenges to the Constitutionality of the SVPA Proceedings

Petitioner is currently being lawfully detained pending trial at ASH. (Answer at 1.) He has raised several claims in his petition challenging the constitutionality of the SVPA proceedings which led to his detention. Respondent argues that because Petitioner is awaiting trial and has not yet been committed, he "does not have standing to challenge its constitutionality under 28 U.S.C. § 2254 because he is a pre-trial detainee." (Answer at 2.) Respondent asserts that the claims challenging the constitutionality of the SVPA proceedings should be dismissed on procedural grounds because "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." (Id.)

Petitioner contends that review pursuant to § 2254 is warranted because the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") modifications extended to the district courts

the discretion to consider the merits of an unexhausted claim pursuant to § 2254.  (Traverse at 2-4.)

### 1.      Standard of Review

Although a pre-trial detainee may not seek habeas relief under § 2254, he may do so under § 2241.  See McNeely v. Blanas, 336 F.3d 822, 824 n.1 (9th Cir. 2003).  However, principles of comity and federalism require that a reviewing court abstain and not entertain a pre-trial habeas challenge unless the Petitioner shows that: (1) he has exhausted available state judicial remedies, and (2) "special circumstances" warrant federal intervention.  Carden v. Montana, 626 F.2d 82, 83-84 (1980), cert. denied, 449 U.S. 1014 (1980); see also Younger v. Harris, 401 U.S. 37, 43-54 (1971) (under principles of comity and federalism, a federal court should not interfere with ongoing state criminal proceedings by granting injunctive or declaratory relief absent extraordinary circumstances).      Interference is appropriate only upon a showing of the state's bad faith or harassment, or a showing that the statute challenged is "flagrantly and patently violative of express constitutional prohibitions."  See Younger, 401 U.S. at 53-54 (cost, anxiety and inconvenience of criminal defense not the kind of special circumstances or irreparable harm that would justify federal court intervention; statute must be unconstitutional in every "clause, sentence and paragraph, and in whatever manner" it is applied); Carden, 626 F.2d at 84 (only in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other special circumstances where irreparable injury can be shown is federal injunctive relief against pending state prosecutions appropriate).  The policies underlying Younger are fully applicable to noncriminal judicial proceedings when important state interests are involved. Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982).

Under the Younger abstention doctrine, barring exceptional circumstances, federal courts may not stay or enjoin pending state criminal court proceedings.  Carden, 626 F.2d at 83.  If Younger applies, a court may not retain jurisdiction, but should dismiss the action.  Juidice v. Vail, 430 U.S. 327, 348 (1977).  Courts have "long recognized that in some circumstances considerations of comity and concerns for the orderly administration of criminal justice require a federal court to forego the exercise of its habeas corpus power."  Francis v. Henderson, 425 U.S. 536, 539 (1976).

1    In the habeas context, the Younger abstention promotes both interests of comity and judicial
2    economy.  A habeas petitioner may be acquitted at trial, or on appeal, thereby mooting the federal
3    issue in the petition.  Sherwood v. Tomkins, 716 F.2d 632, 634 (9th Cir. 1983).
4         The Younger abstention is required when: (1) state judicial proceedings are pending; (2) the
5    state proceedings involve important state interests; and (3) the state proceedings afford an adequate
6    opportunity to raise the federal issue, meaning that there is no procedural bar preventing a party
7    from raising the issue.  Communications Telesystems Int'l v. California Pub. Util. Comm'n, 196 F.3d
8    1011, 1019 (9th Cir. 1999); Dubinka v. Judges of the Superior Court, 23 F.3d 218, 223 (9th Cir.
9    1994).  Abstention is therefore required unless an exception to Younger applies.  Younger
10   exceptions are few and far between: "Only in the most unusual circumstances is a [petitioner]
11   entitled to have federal interposition by way of injunction or habeas corpus until after the jury comes
12   in, judgment has been appealed from and the case concluded in the state courts.  Apparent finality of
13   one issue is not enough."  Drury v. Cox, 457 F.2d 764, 764-65 (9th Cir. 1972).

**2.    Analysis**

According to Petitioner, the state court found probable cause that Petitioner is a SVP and ordered a trial.  Pursuant to the SVPA, Petitioner is currently detained at ASH awaiting trial.  He seeks a writ of habeas corpus challenging the constitutionality of the SVPA proceedings against him.

Petitioner argues that the Court should review his claims because they have been exhausted in the California superior court, the California Court of Appeal and the California Supreme Court. (Traverse at 5.)  However, a conclusion that Petitioner has exhausted his state remedies would not end matters because the Younger abstention doctrine still bars consideration of the petition. Younger applies to the pending SVPA civil commitment proceedings against Petitioner because the proceedings are: 1) judicial in nature, 2) involve important state interests and 3) afford Petitioner an adequate opportunity to raise constitutional issues.  See Communications Telesystems Int'l, 96 F.3d at 1019; Dubinka, 23 F.3d at 223.

As the Court determined in its original order dismissing the petition without prejudice, reasons of comity and federalism require the Court to abstain from ruling on the petition until

7

Petitioner's state proceedings are completed, absent special circumstances.  (See September 30, 2002 Order at 2-3.)  There has been no SVPA trial held to date, and Petitioner has not put forth any special circumstances to warrant federal court intervention.  Under the rationale of Younger, Petitioner's claims challenging the constitutionality of the SVPA proceedings are DISMISSED without prejudice to refiling after his SVPA commitment proceedings, including appeal, are completed.

### B. Violation of Right to Speedy Trial[5]

Petitioner contends that he "has a right to a speedy trial, even thought the [l]egislature failed to specifically acknowledge such in the SVPA statutes." (Pet. at 32.)  Petitioner argues that "[b]ecause of the fact that the SVPA statutes does [sic] not specifically mandate a certain time-frame for which the petition must be filed and provide a specific time frame which would provide guidelines which creates [sic] a basis for speedy trial considerations, as in this specific case, the government believes that it only needs to file a petition prior to the inmate's release on parole in order to hold the inmate past his release date." (Traverse at 10.)  Therefore, Petitioner states that his "speedy trial claim is directed at the fact that due process demands that the government not punish or otherwise deprive a citizen of his liberty until it has been determined through just fashion that such deprivation is necessary . . . ." (Id. at 11.)  Petitioner alleges, "[f]rom the time of which [P]etitioner was supposed to be released back to the community to this present time, there has been no adjudication of the actual merit of the state's petition." (Id. at 12.)

Respondent alleges that Petitioner is responsible for the five-year delay and thus relinquished his right to a speedy trial. (Answer at 4.)  Respondent argues that any delay in the SVPA trial should weigh against Petitioner.  Respondent further alleges that because Petitioner failed to identify specific prejudice resulting from the delay in this case, his habeas petition should be denied. (Id.)

---

[5] Unlike his constitutional challenge to the SVPA proceedings, Petitioner's speedy trial claim merits an exception to the Younger doctrine.  Cf. McNeely, 336 F.3d at 824 n.1 (in the context of an attempt to assert a right to a speedy trial, §2241(c)(3) empowers district courts to issue the writ, inter alia, before a judgment is rendered in a criminal proceeding).

### 1. Standard of Review

Because Petitioner was a pretrial detainee when he filed his federal claim, the claim of a denial of a right to speedy trial should be analyzed under § 2241. See McNeely, 336 F.3d at 824 n.1 (pretrial detainee's speedy trial claim falls under 28 U.S.C. § 2241, rather than § 2254).

Under § 2241, this Court may grant a writ of habeas corpus to a prisoner "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

### 2. Analysis

It is clear that the full panoply of rights afforded criminal defendants under the Constitution are not applicable to SVPA defendants because SVPA is civil in nature. See, e.g., Allen v. Illinois, 478 U.S. 364, 371-72 (1986) (Fifth Amendment guarantee against compulsory self-incrimination inapplicable to commitment proceedings under Illinois' Sexually Dangerous Persons Act because commitment proceedings were regulatory and not criminal in nature, and also finding that, even though some safeguards applicable to criminal proceedings were provided for by statute, the proceedings were not converted into criminal proceedings as a result thereof); United States v. Perry, 788 F.2d 100, 118 (3d Cir. 1986) ("The speedy trial clause deals with the timeliness of criminal prosecutions, not civil commitment proceedings."); see generally United States v. Budell, 187 F.3d 1137, 1141 (9th Cir. 1999) (noting that because a commitment hearing is a civil matter, the constitutional rights to which a defendant in a criminal trial is entitled do not adhere to a respondent in a commitment hearing). However, case law relating to speedy civil commitment trial rights is sparse. The law surrounding speedy trial rights in the criminal context therefore is instructive. Accord Atwood v. Vilsack, 338 F. Supp. 2d 985, 994 (S.D. Iowa 2004) (applying Sixth Amendment speedy trial right law to analyze denial of speedy justice claim by pretrial detainees awaiting civil commitment hearings pursuant to Iowa's Sexually Violent Predator Act).

A speedy trial is a fundamental right guaranteed the accused by the Sixth Amendment and imposed by the Due Process Clause of the Fourteenth Amendment on the states. Klopfer v. North Carolina, 386 U.S. 213, 223 (1967). The Supreme Court has not devised a per se rule to determine whether the right to a speedy trial has been violated. Instead, courts must apply a flexible functional

analysis, and consider and weigh the following factors in evaluating a speedy trial claim: (1) length of the delay; (2) the reason for the delay; (3) the petitioner's assertion of his right; and (4) prejudice to the petitioner. Doggett v. United States, 505 U.S. 647, 651 (1992); Barker v. Wingo, 407 U.S. 514, 530 (1972). None of the four factors are either a necessary or sufficient condition for finding a speedy trial deprivation. Barker, 407 U.S. at 533. They are related factors and must be considered together with such other circumstances as may be relevant. Id. As the Court put it, "these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process." Id.

### a. Length of the delay

The first factor of the Barker test -- length of the delay -- is actually a dual inquiry. First, as a threshold matter, only if the delay is "presumptively prejudicial" need the Court inquire into the remaining Barker factors. Barker, 407 U.S. at 530. Second, "if the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." Doggett, 505 U.S. at 652.

In examining the first prong of the delay factor, the Ninth Circuit has held that presumptive prejudice is not dispositive and instead is simply part of the mix of relevant facts and its importance increases with the length of the delay. United States v. Gregory, 322 F.3d 1157, 1162 (9th Cir. 2003). Depending on the nature of the charges, lower courts have generally found post-accusation delay presumptively prejudicial as it approaches one year. Doggett, 505 U.S. at 652 n.1; see McNeely, 336 F.3d at 826 (three-year delay was presumptively prejudicial); Gregory, 322 F.3d at 1162 (22-month delay between first superseding indictment and trial date was presumptively prejudicial but did not weigh heavily in defendant's favor because it was not excessively long).

Here, the Court finds that the first Barker factor weighs in favor of Petitioner's right to a speedy trial. The State petitioned to have Petitioner civilly committed on March 27, 2000. More than five years later, Petitioner has not yet been brought to trial. Furthermore, Respondent conceded that the nearly five-year delay in Petitioner's civil commitment trial is substantial. (Answer at 3.)

The Court agrees that the five-year delay is clearly sufficient to require consideration of the remaining Barker factors. See Doggett, 505 U.S. at 652. Moreover, in considering the second part of the delay inquiry, the Court finds that the five-year delay far exceeds the "bare minimum" for "judicial examination of the claim." Doggett, 505 U.S. at 652. Accordingly, the Court finds that this factor weighs in favor of Petitioner. The Court now looks to the second, third, and fourth Barker factors.

        **b.**      **Reasons for the Delay**

Respondent argues that although a five-year delay in this case is substantial, it should be weighed against Petitioner because he relinquished his right to a speedy trial by waiving time. (Answer at 3; Resp't Ex. C.) The reason for the delay is the second prong in the Barker analysis. Barker, 407 U.S. at 530. Specifically, the second Barker factor asks which party is responsible for the delay. Courts generally look to the reasons for the delay in commencing the trial to determine whether those reasons are deliberate, neutral, or valid. Id. at 531 (focusing evaluation of the delay on "the reason the government assigns to justify the delay"). Barker, 407 U.S. at 531; United States v. Henry, 615 F.2d 1223, 1233 (9th Cir. 1980).

In assessing the government's explanation, different weights should be assigned to different reasons. Intentional delays which obtain a strategic advantage for the prosecution are weighed heavily against the government. Barker, 407 U.S. at 531. A more neutral reason such as negligence or overcrowded courts should be weighed less heavily, but nevertheless should be considered because the ultimate responsibility for such circumstances rests with the government rather than with the petitioner. Id. A valid reason, such as a missing witness, serves to justify appropriate delay. Id. Delay attributable to the petitioner's own acts or to tactical decisions by petitioner's counsel will not bolster a petitioner's speedy trial argument. See McNeely, 336 F.3d at 827.

Here, Respondent contends that Petitioner is solely responsible for the delay by waiving his right to a speedy trial. Petitioner does not refute that he unequivocally waived his speedy trial rights by continuing the trial date. He alleges that "[i]t is very common for SVPA matters to be continued from month to month not because of the SVPA defendant's wishes, but because of the simple fact

11

that the DMH does not assign evaluators to inmates from counties near the evaluator's practice, in general." (Traverse at 12.) Petitioner adds that "[e]valuators travel up and down the state, performing SVPA evaluations on whatever inmate is assigned to them from DMH. Therefore, it often becomes difficult to secure the court appearance of an evaluator within a given time period for testimony." (Id.) However, nowhere does Petitioner allege that the district attorney asked for a continuance because an evaluator was not able to testify at his trial. Indeed, Petitioner does not assert that the district attorney in his case was responsible for continuing his trial, and he does not deny that he was responsible for the continuances.

The record shows that after the superior court found probable cause to believe that Petitioner was a sexually violent predator on August 25, 2000, the case was continued from time to time for the next five years. (Resp't Ex. C [minute orders from March 9, 2001 through November 5, 2004]; Resp't Ex. E [transcript of proceedings on November 5, 2004 and February 4, 2005].)

In addition to the minute orders, Respondent has submitted the reporter's transcripts from the proceedings on November 5, 2004 and February 4, 2005. In the proceeding on November 5, 2004, Petitioner's attorney, Mr. Mertens, explains to the court and Deputy District Attorney Scott Swisher that Petitioner waived his right to a speedy trial within five years after his SVPA petition was filed[6] because he was waiting for a ruling on his federal habeas corpus petition:

> MR. MERTENS: . . . I talked to him on the phone. We talked previously about this.
>
> The district attorney was concerned about his, perhaps his speedy trial rights of five -- within five years from the time the petition's brought, which I believe is under Civil Code of Procedure -- I'm not looking at it here -- five thirteen something.

---

[6] During the pretrial hearing, it appeared that the parties believed California Code of Civil Procedure § 583.310 applied. Section 583.310 states that a civil "action shall be brought to trial within five years after the action is commenced against the defendant." The SVPA does not expressly incorporate a five-year speedy trial rule, therefore, section 583.310 does not extend to SVPA proceedings. See Bagration v. Superior Court, 110 Cal. App. 4th 1677, 1685 (2003) (provisions from the Civil Code of Civil Procedure do not generally extend to a special proceeding unless the statutes establishing the special proceeding expressly incorporate each provision). The claim in the instant federal habeas petition is not whether the delay exceeded a state statutory time limit, but whether it violated Petitioner's federal right to a speedy civil commitment trial.

| | | |
|---|---|---|
| MR. SWISHER: | | I'm not sure. |
| MR. MERTENS: | | In talking to Mr. Coleman, he's willing to waive that right. He's pursuing a writ of habeas corpus in Federal Court. He wants that to be determined before he proceeds to trial on this matter. |
| MR. SWISHER: | | I asked Mr. Mertens explicitly over and over and over again, and Mr. Mertens gave me assurance that he did thoroughly discuss with Mr. Coleman the five-year right to a trial, that he explicitly agreed that that would be given up. We wouldn't bring Mr. Coleman up here or ask for a written waiver. |
| | | Mr. Mertens indicated he's had a hard time getting those papers into Mr. Coleman's hands, but Mr. Mertens would, as an officer of the court -- I didn't think he needs to be put under oath -- indicate what he just did, that is, in fact, that the five-year right was discussed with Mr. Coleman, and Mr. Coleman agreed it would be waived. |
| THE COURT: | | Is that right? |
| MR. MERTENS: | | Correct. |

(Resp't Ex. E [transcript of proceedings on November 5, 2004] at 1-2.)

Respondent has also submitted the transcript of the February 4, 2005 proceeding, which indicates that the date to set the SVPA trial was once again continued to May 6, 2005:

| | | |
|---|---|---|
| THE COURT: | | Calling the matter of Carl Coleman. Please state your appearances for the record. |
| MS. MCMAHON: | | Colleen McMahon for the People. |
| MR. MERTENS: | | Bob Mertens appearing for Mr. Coleman who is still waiting for a decision on his writ of habeas corpus. |
| | | We would ask for May 6th to set. |

(Resp't Ex. E [transcript of proceedings on February 4, 2005] at 1.)

The record also shows that during the five-year period Petitioner's case was continued without objection, Petitioner was busy challenging the legality of the SVPA proceedings against him by filing numerous pro se petitions in the state court of appeal and supreme court, and in the federal court.

Based on a review of the record as a whole, the Court finds that the five-year delay should be attributable to Petitioner because he neither asserted his right to a speedy trial nor did he object to any continuances. The record shows that even after the case had been continued numerous times

from 2000 to 2004, continuances of the SVPA trial -- after an over four-year delay -- on November 5, 2004 and February 4, 2005 were sought by Petitioner's attorney with Petitioner's consent. See United States v. Shetty, 130 F.3d 1324, 1330-31 (9th Cir. 1997) (finding delay attributable to defendant where neither defense counsel nor defendant objected to any of the continuances granted and instead stipulated to most); see United States v. Lam, 251 F.3d 852, 858 (9th Cir.), amended, 262 F.3d 1033 (9th Cir. 2001) (finding defendant bound by his attorney's actions in having sought several continuances, but noting that defendant can preserve his rights to a speedy trial when he expressly asserts his rights and his actions contradict his counsel's). Petitioner had ample opportunity to object to any of the continuances but the record does not show that he ever objected. Cf. McNeely, 336 F.3d at 829 n.8 (finding defense counsel's waiver of time not necessarily attributable to defendant where defendant repeatedly disagreed with counsel and asserted his right to a speedy trial).

This conclusion is supported by the fact that the collateral challenges Petitioner filed during the time at issue indicate that he was interested in preventing a trial, not in having a speedy one. The Court is satisfied that the substantial pretrial delay in this case is attributable to Petitioner.[7] Petitioner, rather than the state, is substantially "more to blame" for the delay. Doggett, 505 U.S. at 651. Barker's second factor does not support Petitioner's claim.

### c.  Petitioner's Assertion of the Right

A petitioner's assertion of his speedy trial right is "entitled to strong evidentiary weight in determining whether the [petitioner] [was] deprived of the right." Barker, 407 U.S. at 531-32. The "failure to assert the right will make it difficult for a [petitioner] to prove that he was denied a speedy trial." Id. at 532. "[I]f delay is attributable to the [petitioner], then his waiver may be given effect under standard waiver doctrine." Id. at 529.

Even repeated assertions of a petitioner's speedy trial right must be viewed in light of the

---

[7] That the state may have contributed to the delay does not compel a different conclusion. Although the state perhaps should have been more forceful in advocating society's (if not Petitioner's) interest in speedy trials, the Petitioner's active role in the delay far outweighs any lack of action on the part of the state.

petitioner's other conduct.  United States v. Loud Hawk, 474 U.S. 302, 314 (1986).  A petitioner may not establish that he appropriately asserted his speedy trial rights when at the same time he was asserting the right in the trial court by filing motions and appeals which contributed to the delay in his trial.  See id. at 314-15 (finding that defendants' repeated assertions of their speedy trial rights was contradicted by their filings of frivolous petitions in the appellate courts and of repeated and unsuccessful motions in the trial court, which contributed to the delay in their trial); Lam, 251 F.3d at 859 (finding that where counsel's successive requests for continuances are attributable to the defendant, the weight of the defendant's assertions of his speedy trial right is considerably diminished).

      Nowhere did Petitioner assert his right to a speedy trial because Petitioner never specifically asked for his case to go to trial.  Instead of asserting his right to proceed to trial promptly, the record shows that: 1) Petitioner sought to delay his trial by filing several habeas corpus petitions through the state superior court, appellate court and supreme court, as well as federal district court, in which he repeatedly challenged the legality of the SVPA proceedings pending against him, and 2) Petitioner continued to resist efforts to set the case for trial by advising his attorney to ask for continuances pending this Court's decision on his federal habeas corpus petition.  While Petitioner may have been within his rights to mount such challenges – futile though they have been – he cannot take advantage of the delay that those challenges inevitably and unavoidably caused by now claiming that he was denied his rights to a speedy trial.  The record "strongly suggests that while he hoped to take advantage of the delay in which he had acquiesced, and thereby obtain a dismissal of the charges, he definitely did not want to be tried."  Barker, 407 U.S. at 535.  Barker's third factor does not support Petitioner's claim.

### d.     Prejudice

     Petitioner bears the burden of demonstrating actual prejudice under the fourth Barker factor because he is responsible for the delay in his trial.  Lam, 251 F.3d at 859; United States v. Manning, 56 F.3d 1188, 1195 (9th Cir. 1995); United States v. Aguirre, 994 F.2d 1454, 1458 (9th Cir. 1993).  "Doggett holds that we should presume prejudice only if the [petitioner] is not responsible for the

delay." Aguirre, 994 F.2d at 1457. But if the petitioner is responsible for the delay in his trial, then he carries the heavy burden of demonstrating actual prejudice to succeed on a speedy trial claim. Id. at 1458.[8]

Actual prejudice can be shown in three ways: (1) oppressive pretrial incarceration; (2) anxiety and concern of the accused; and (3) the possibility that the accused's defense will be impaired. Doggett, 505 U.S. at 654; Barker, 407 U.S. at 532. "Of these, the most serious is the last, because the inability of [the accused] adequately to prepare his case skews the fairness of the entire system." Id.

Petitioner does not credibly point to any specific damage to his defense stemming from the delay in his trial. The same doctor who evaluated him in 2000 was available to re-evaluate him. In fact, the delay could have assisted his defense had he availed himself of the sexual offender treatment programs available at Atascadero State Hospital, where he was detained. Cf. Loud Hawk, 474 U.S. at 315 (noting that delay is a two-edge sword; the passage of time may make it more difficult or impossible for the government to carry its burden of proof).

The only real prejudice that Petitioner can credibly claim is the fact that he was detained at a state hospital throughout his substantial delay. Such prolonged detention, along with the attendant anxiety to the accused, is of significant concern given the centrality of the liberty component of the prejudice inquiry. Lam, 251 F.3d at 860. This factor must be balanced and assessed in light of the other Barker factors, including the reasons and responsibility for the delay. Id.

After a careful review of the record, the Court has found that Petitioner is responsible for the delay in his trial and that he did not appropriately assert his speedy trial rights. His five-year detention without trial at Atascadero State Hospital may be unfortunate, but by itself it cannot be said to outweigh these other considerations especially given that Petitioner's pursuit of other avenues of relief are largely, perhaps almost wholly, to blame for this lapse of time. Furthermore, Petitioner's attorney clearly stated to the trial court that it was Petitioner's decision to delay the trial until his

---

[8] The prejudice must have been caused by the pretrial delay, not some other unrelated reason. Gregory, 322 F.3d at 1163-64.

federal habeas corpus petition was decided. (Resp't Ex. E [transcript of proceedings on November 5, 2004] at 1.) Therefore, Barker's final factor of prejudice does not support Petitioner's claim.

Upon weighing each of the Barker factors, the Court concludes that Petitioner's constitutional right to a speedy civil commitment trial was not violated. Cf. Barker, 407 U.S. at 533-36 (finding no Sixth Amendment speedy trial violation where criminal defendant did not request a speedy trial and had not been seriously prejudiced by the more than five-year delay between his arrest and trial, even though most of the delay was attributable to prosecutor's inability to try a co-indictee and get him to testify at the defendant's trial). Accordingly, Petitioner's speedy trial claim does not entitle him to habeas relief.

## IV. CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED. The petition fails on all claims because: 1) the Court DISMISSED Petitioner's challenges to the constitutionality of the SVPA proceedings against him pursuant to the Younger abstention doctrine and 2) Petitioner's claim for habeas relief is DENIED as to his only remaining speedy trial claim. Petitioner chose to challenge the constitutionality of the SVPA in both state and federal court, instead of asserting his right to a speedy trial. As the transcript of the November 5, 2004 hearing shows, it was solely Petitioner's and his attorney's decision to further delay his SVPA trial until this Court ruled on his federal habeas corpus petition. The result of his decision cannot be the basis for habeas relief. Moreover, the Court finds that Petitioner's constitutional right to a speedy civil commitment trial was not violated upon weighing each of the Barker factors.

The Clerk of the Court shall terminate all pending motions as moot, enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

DATED: 8/2/05

SAUNDRA BROWN ARMSTRONG
United States District Judge